UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FELIX CARABALLO,                    :
                                    :
            Plaintiff               :      No. 4:11-CV-00112
                                    :
      vs.                           :      (Judge Kosik)
                                    :
MICHAEL J. ASTRUE,                  :
COMMISSIONER OF SOCIAL              :
SECURITY,                           :
                                    :
            Defendant               :

                    MEMORANDUM

**FILED**
**SCRANTON**

MAR 2 2 2012

Per_____
                  DEPUTY CLERK

## Background

        The above-captioned action is one seeking review of a
decision of the Commissioner of Social Security ("Commissioner")
denying Plaintiff Felix Caraballo's claim for social security
disability insurance benefits and supplemental security income
benefits.

        On January 2, 2008, Caraballo protectively filed[1] an
application for disability insurance benefits and an application
for supplemental security income benefits. Tr. 17, 27, 82 and 386.[2]

---

1.  Protective filing is a term for the first time an individual
contacts the Social Security Administration to file a claim for
benefits.  A protective filing date allows an individual to have
an earlier application date than the date the application is
actually signed.

2.  References to "Tr.___" are to pages of the administrative
record filed by the Defendant as part of his Answer on May 5,
2011.

On May 19, 2008, the Bureau of Disability Determination[3] denied Caraballo's applications. Tr. 53-57 and 387-391.  On May 30, 2008, Caraballo requested a hearing before an administrative law judge. Tr. 49-50.  On September 9, 2008, a hearing was held before an administrative law judge. Tr. 502-530.  On November 20, 2008, the administrative law judge issued a decision denying Caraballo's applications. Tr. 19-26.  On December 4, 2008, Caraballo requested that the Appeals Council review the administrative law judge's decision. Tr. 12-13.  After about 14 months had passed, the Appeals Council on January 26, 2010, denied Caraballo's request for review. Tr. 9.  However, on November 6, 2010, the Appeals Council set aside that decision to consider additional information and then after considering that information concluded that there was no basis upon which to grant Caraballo's request for review. Tr. 5-8.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Caraballo then filed a complaint in this court on January 17, 2011.  Supporting and opposing briefs were submitted

---

3.   The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration.   Tr. 54 and 388.

and the appeal[4] became ripe for disposition on July 22, 2011, when Caraballo elected not to file a reply brief.

For the reasons set forth below we will affirm the decision of the Commissioner denying Caraballo's applications for disability insurance benefits and supplemental security income benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  It is undisputed that Caraballo met the insured status requirements of the Social Security Act through March 31, 2011. Tr. 17, 19 and 83.

Supplemental security income (SSI) is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income.

Caraballo, who was born on May 31, 1970, is a United States citizen, and at all times relevant to this matter was considered a "younger individual"[5] whose age would not seriously

---

4.  Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

5.  The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through
(continued...)

3

impact his ability to adjust to other work. 20 C.F.R. §§
404.1563(c) and 416.963(c). Tr. 114 and 124.

   Caraballo has the equivalent of a high school education
and can read, write, speak and understand the English language. Tr.
86, 96 and 299.   During his elementary and secondary schooling
Caraballo attended regular education classes. Tr. 96.   Although
Caraballo withdrew from school after completing the ninth grade, he
obtained a General Equivalency Diploma. Tr. 299. After obtaining a
General Equivalency Diploma, Caraballo attended college for 3
years. Tr. 96. Caraballo also received training in Heating,
Ventilation and Air Conditioning (HVAC), forklift operation and
computer technology. Id.

   Caraballo served in the United States Army (82nd
Airborne) from 1991 through June 1997. Tr. 296 and 298-300.
Caraballo was stationed at Fort Bragg, Fort Benning and in Saudia
Arabia, but saw no active combat duty. Tr. 296, 298 and 300.
Caraballo suffered a service connected back injury in 1993 at Fort
Bragg during a parachute jump. Tr. 296-297.  Also, in 1992 or 1993,
while at Fort Bragg, Caraballo suffered a laceration to his right
arm "when he struck a glass window in the barracks area." Tr. 294.
The injury to his arm was surgically repaired at Fort Bragg. Tr.
306.  Although "under honorable conditions," Caraballo was

_____

5.   (...continued)
49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

4

discharged from the Army because of depression and suicidal ideations. Tr. 298 and 300.

Caraballo was awarded a partial service connected disability pension for the injury to his back. Tr. 213. In March, 2008, Caraballo filed with the Department of Veterans Affairs a request for an increase in his compensation. Id. In September, 2008, that request was denied. Tr. 361-369. The Department of Veterans Affairs continued Caraballo's 10% disabling service connected back injury, but denied his claims for (1) service connected carpal tunnel syndrome, (2) service connected depression, (3) service connected bilateral lower extremity neuropathy and (4) service connected post traumatic stress disorder. Id. The Department of Veterans Affairs also denied Caraballo's claim for entitlement to individual unemployability.[6] Tr. 366-367.

Caraballo has past relevant employment[7] as (1) a night crew manager at a supermarket, (2) a materials handler, (3) a forklift operator, (4) a security officer and (5) a member service representative at an HMO. Tr. 518-520. The night crew manager position was described by a vocational expert as skilled, light

---

6. "Entitlement to individual unemployability may be established if the medical evidence of record indicates [the claimant is] unable to secure or follow a substantially gainful occupation as a result of [the claimant's] service connected disabilities." Tr. 366.

7. Past relevant employment in the present case means work performed by Caraballo during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

work; the materials handler position as semi-skilled, heavy work;

the forklift operator as semi-skilled, medium work; the security

officer position as semi-skilled, light work; and the member

services representative as semi-skilled, sedentary work.[8] Id.

---

8.   The terms sedentary, light, medium and heavy work are defined
in the regulations of the Social Security Administration as
follows:

> (a) *Sedentary work*. Sedentary work involves lifting no
> more than 10 pounds at a time and occasionally lifting
> or carrying articles like docket files, ledgers, and
> small tools.  Although a sedentary job is defined as
> one which involves sitting, a certain amount of walking
> and standing is often necessary in carrying out job
> duties.  Jobs are sedentary if walking and standing are
> required occasionally and other sedentary criteria are
> met.

> (b) *Light work*.  Light work involves lifting no more
> than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even
> though the weight lifted may be very little, a job is
> in this category when it requires a good deal of
> walking or standing, or when it involves sitting most
> of the time with some pushing and pulling of arm or leg
> controls.  To be considered capable of performing a
> full or wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine that he or
> she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

> (c) *Medium work*.  Medium work involves lifting no more
> than 50 pounds at a time with frequent lifting or
> carrying of objects weighing up to 25 pounds.  If
> someone can do medium work, we determine that he or she
> can do sedentary and light work.

> (d) *Heavy work*.  Heavy work involves lifting no more
> than 100 pounds at a time with frequent lifting or
> carrying of objects weighing up to 50 pounds. If
> someone can do heavy work, we determine that he or she
>                                       (continued...)

6

Records of the Social Security Administration reveal that Caraballo had earnings in the years 1987 through 2008. Tr. 58 and 62. Caraballo's highest annual earnings were in 2007 (in the amount of $24,818.14). Tr. 62. During that year, Caraballo worked as a night crew manager and as a customer service representative for AT&T.[9] Tr. 98. The bulk of Caraballo's 2007 income was earned prior to September 1, 2007, when he was working as a night crew manager.[10] Tr. 19 and 58.

Caraballo claims that he became disabled on September 1, 2007,[11] because of carpal tunnel syndrome in the dominant right hand, status post right wrist injury with decreased range of motion of the thumb and decreased grip strength, degenerative disc disease

---

8. (...continued)
     can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

9. The vocational expert testified that Caraballo's work as a customer service representative for AT&T was not past relevant employment because it did not amount to substantial gainful activity. Tr. 518-519.

10. The administrative law judge determined that Caraballo did not engage in substantial gainful activity after September 1, 2007. Tr. 19.

11. Caraballo was 37 years old on the alleged disability onset date and 38 years old on the date of the administrative law judge's decision.

of the lumbar spine, posttraumatic stress disorder and depression.

Tr. 505. Caraballo has not worked since January of 2008.[12]

## Standard of Review

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th

---

12. At the time of the administrative hearing, Caraballo was attending college at the Harrisburg Area Community College. Tr. 506.

Cir. 2001);  Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance.  Brown, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason, 994 F.2d at 1064.  The Commissioner must indicate which evidence was accepted,

which evidence was rejected, and the reasons for rejecting certain evidence. <u>Johnson</u>, 529 F.3d at 203; <u>Cotter</u>, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.   <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981); <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir. 1979).

## Sequential Evaluation Process

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; <u>Poulos</u>,

10

474 F.3d at 91-92.  This process requires the Commissioner to

consider, in sequence, whether a claimant (1) is engaging in

substantial gainful activity,[13] (2) has an impairment that is severe

or a combination of impairments that is severe,[14] (3) has an

impairment or combination of impairments that meets or equals the

requirements of a listed impairment,[15] (4) has the residual

---

13.  If the claimant is engaging in substantial gainful activity,
the claimant is not disabled and the sequential evaluation
proceeds no further. Substantial gainful activity is work that
"involves doing significant and productive physical or mental
duties" and "is done (or intended) for pay or profit."  20 C.F.R.
§ 404.1510 and 20 C.F.R. § 416.910.

14.   The determination of whether a claimant has any severe
impairments, at step two of the sequential evaluation process, is
a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a
claimant has no impairment or combination of impairments which
significantly limits the claimant's physical or mental abilities
to perform basic work activities, the claimant is "not disabled"
and the evaluation process ends at step two.  Id.  If a claimant
has any severe impairments, the evaluation process continues.  20
C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all
medically determinable impairments, severe and non-severe, are
considered in the subsequent steps of the sequential evaluation
process.  20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and
416.945(a)(2). An impairment significantly limits a claimant's
physical or mental abilities when its effect on the claimant to
perform basic work activities is more than slight or minimal.
Basic work activities include the ability to walk, stand, sit,
lift, carry, push, pull, reach, climb, crawl, and handle. 20
C.F.R. § 404.1545(b).  An individual's basic mental or non-
exertional abilities include the ability to understand, carry out
and remember simple instructions, and respond appropriately to
supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

15.  If the claimant has an impairment or combination of
impairments that meets or equals a listed impairment, the
(continued...)

11

functional capacity to return to his or her past work and (5) if

not, whether he or she can perform other work in the national

economy. Id.  As part of step four the administrative law judge

must determine the claimant's residual functional capacity. Id.[16]

Residual functional capacity is the individual's maximum

remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis.  See Social

Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular

and continuing basis contemplates full-time employment and is

defined as eight hours a day, five days per week or other similar

schedule. The residual functional capacity assessment must include

a discussion of the individual's abilities.  Id; 20 C.F.R. §§

404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual

functional capacity' is defined as that which an individual is

---

15.  (...continued)
claimant is disabled. If the claimant does not have an impairment
or combination of impairments that meets or equals a listed
impairment, the sequential evaluation process proceeds to the
next step. 20 C.F.R. § 404.1525 explains that the listing of
impairments "describes for each of the major body systems
impairments that [are] consider[ed] to be severe enough to
prevent an individual from doing any gainful activity, regardless
of his or her age, education, or work experience." Section
404.1525 also explains that if an impairment does not meet or
medically equal the criteria of a listing an applicant for
benefits may still be found disabled at a later step in the
sequential evaluation process.

16.  If the claimant has the residual functional capacity to do
his or her past relevant work, the claimant is not disabled.

still able to do despite the limitations caused by his or her
impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the
sequential evaluation process found that Caraballo had not engaged
in substantial gainful work activity since September 1, 2007, the
alleged disability onset date. Tr. 19. The administrative law judge
stated that Caraballo had engaged in work activity after the
alleged onset date but that the work activity did not rise to the
level of substantial gainful activity in light of the limited
earnings received. Id.

At step two of the sequential evaluation process, the
administrative law judge found that Caraballo had the following
severe impairments: (1) degenerative joint disease of the right
ankle; (2) carpal tunnel syndrome of the right hand; (3) status
post laceration of the right wrist; (4) chronic pain and (5)
posttraumatic stress disorder. Id.

At step three of the sequential evaluation process the
administrative law judge found that Caraballo's impairments did not
individually or in combination meet or equal a listed impairment.
Tr. 19-21.

At step four of the sequential evaluation process the
administrative law judge found that Caraballo had the "residual

13

functional capacity to perform work activity involving the lifting up to 10 pounds occasionally, 5 pounds frequently; sitting a total of 6 hours in an 8 hour workday; standing a total of 4 hours in an 8 hour workday; walking a total of 4 hours in an 8 hour workday; pushing/pulling no more than 5 pounds with his [right] upper extremity, 10 pounds with his left upper extremity; and unlimited pushing and pulling with his lower extremities, bilaterally. However, the work must not involve more than simple, routine, repetitive, two step work tasks; must not involve precise attention to detail; must allow the claimant to sit or stand at will; must not involve crawling; must not involve more than occasional bending, climbing, balancing, stooping, kneeling or crouching; must not involve more than frequent reaching overhead; must not involve more than occasional manipulation with the dominant right upper extremity; and must be able to be performed at a moderate pace and must be able to be performed by someone with moderate limitation in the ability to handle stress." Tr. 21.

Based on the above residual functional capacity and the testimony of a vocational expert, the administrative law judge found that Caraballo could not perform his prior relevant work but that he had the ability to perform some unskilled, sedentary

positions.[17]   The administrative law judge found that Caraballo

could perform work as information clerk, travel clerk, surveillance

monitor, and call out operator, and that there were a significant

number of such jobs in the local and national economies. Tr. 25-26.

The administrative law judge in finding that Caraballo could

engage in these sedentary positions relied on the opinions of

Candelaria Legaspi, M.D., a state agency physician, and Mitchell

Sadar, Ph.D., a state agency psychologist. Tr. 24, 159-168 and 175-

181.   Dr. Legaspi concluded that Caraballo had the physical

exertional abilities to engage in light work and Dr. Sadar

concluded that Caraballo was "able to meet the basic mental demands

of competitive work on a sustained basis despite the limitations

resulting from his impairment." Tr. 161 and 176-177.

The administrative record in this case is 530 pages in

length, primarily consisting of medical and vocational records.

Caraballo argues that the administrative law judge erred (1) by

failing to find at step three of the sequential evaluation process

that Caraballo's physical and mental impairments met or equaled

the requirements of a listed impairment, and (2) by finding that

Caraballo has the residual functional capacity to be introduced

---

17.   In answering the administrative law judge's residual
functional capacity hypothetical question, the vocational expert
limited Caraballo to performing unskilled to semi-skilled,
sedentary jobs. Tr. 522-526.

back into the work force.  We have thoroughly reviewed the record in this case and find no merit in Caraballo's arguments.  The administrative law judge did an adequate job of reviewing Caraballo's vocational history and medical records in his decision. Tr. 17-26.  Furthermore, the brief submitted by the Commissioner thoroughly reviews the medical and vocational evidence in this case. Doc. 11, Brief of Defendant.  Consequently, we will only comment on few items of evidence.

Initially it should be stated that no treating physician, psychiatrist or psychologist has provided a functional assessment of Caraballo indicating that he is or was unable to perform any type of work for the requisite continuous 12-month statutory period.  Also, as stated earlier, the record contains an assessment of Caraballo's physical functional abilities completed by Dr. Legaspi and mental functional abilities completed by Dr. Sadar, both of which supports the administrative law judge's decision that Caraballo can engage in sedentary work as an information clerk, travel clerk, surveillance monitor, and call out operator.[18]

Caraballo received medical care at the Veterans Administration Medical Center, Lebanon, Pennsylvania.  An MRI of

---

18.  Dr. Legaspi indicated that Caraballo could engage in light work. If an individual can perform light work, he or she can also perform sedentary work. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

Caraballo's lumbar spine in September 2007, revealed disc degeneration with a mild central bulge or protrusion but no spinal canal or neural foraminal stenosis.[19] Tr. 183. X-rays of the right wrist in January, 2008, were normal. Tr. 306. An electromyography of the right hand in February, 2008, was normal.[20] Tr. 304. An x-ray of Caraballo's left ankle in May, 2008, revealed mild degenerative arthritis "with mild spurring off the tibial articular surface." Tr. 196. X-ray films of the lumbar spine in August 6, 2008, were "within normal limits." Tr. 334. At an appointment with Bruce J.

---

19.  Discogenic disease or degenerative disc disease is disease or degeneration of the intervertebral discs. As we age the intervertebral discs lose water content (dessication) and become more fragile. The intervertebral discs, the soft cushions between the 24 bony vertebral bodies, have a tough outer layer and an inner core composed of a gelatin-like substance, the nucleus pulposus. The outer layer of an intervertebral disc is called the annulus fibrosus. A bulge (protrusion) is where the annulus of the disc extends beyond the perimeter of the vertebral bodies. A herniation is where the nucleus pulposus goes beyond its normal boundary into the annulus and presses the annulus outward or ruptures the annulus. Such bulges (protrusions) and herniations if they contact nerve tissue can cause pain. Herniations are one cause of spinal stenosis and neural foraminal stenosis. Spinal stenosis is narrowing of the spaces in the spine. Foraminal stenosis is the narrowing of the openings through which nerve roots exit.   The nerve roots are branches of the spinal cord. They carry signals to the rest of the body at each level along the spine. See William C. Shiel, Jr., M.D., Degenerative Disc Disease and Sciatica, MedicineNet.com, http://www.medicinenet.com/degenerativedisc/page2.htm (Last accessed March 19, 2012).

20.  "Electromyography (EMG) is a test that checks the health of the muscles and the nerves that control the muscles." Electromyography, MedlinePlus Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/003929.htm (Last accessed March 19, 2012).

17

Hinkle, M.D., at the VA Medical Center on September 30, 2008, Caraballo denied joint pain. Tr. 374.   X-rays of the lumboscral spine in July, 2009, were "within normal limits." Tr. 399.    An MRI of Caraballo's right arm on August 4, 2009, was normal.

Several medical records suggest that Caraballo engaged in symptom magnification.  On August 11, 2008, Caraballo was examined by Katherine Mulligan, M.D., at the VA Medical Center. Tr. 350-351. After examining Caraballo, Dr. Mulligan noted with respect to Caraballo's back pain that the "[p]ain reported seemed disproportionate by current exam." Id.  Dr. Mulligan made a similar comment with respect to Caraballo's complaints of right wrist pain. Id.   In an addendum to her report, Dr. Mulligan stated as follows: "Please note, Veteran did bring up concern regarding completion of forms regarding employability during the final part of the interview process.  Admittedly Veteran's right thumb is a deficit, however, occupational support would benefit veteran. Also, it was pointed out to Veteran, 'that given his efforts to achieve his college education and the progress he has been making, such efforts should be continued and in fact encouraged.  Sedentary work with liberal changes in position would be recommended and encouraged." Tr. 351.

On September 26, 2008, Caraballo had an appointment with Christina M. Clark, a certified physician's assistant, at the VA

Medical Center. Tr. 380-381.  Ms. Clark in her report of that

appointment stated as follows:

> [Caraballo] tells me he lives with chronic pain and is
> unable to work.  I have investigated left ankle pain,
> x-ray reveals mild degenerative arthritis, I again
> review radiology report with patient. I explain this
> amount of arthritis would not be considered a disabling
> diagnosis. I again review Lumbar spin MRI with patient
> which was normal, done 9/2007. MRI revealed L4L5
> mild disc degeneration and central annular disc
> bulge, no stenosis or herniation appreciated. I
> explain these are clinically insignificant findings
> and do not explain his chronic back pain . . . .

Id.  Ms. Clark in the assessment portion of the report reiterated

that Caraballo's reported pain was not consistent with the

objective medical findings. Id.

On July 23, 2009, Caraballo was examined by Padma

Surapaneni, M.D., at the VA Medical Center. Tr. 428-434. Dr.

Surapaneni in his report of that examination of Caraballo states in

relevant part as follows:

> When asked about his pain he goes into circumventing
> answers . . . He did not have difficulty donning and
> doffing shoes and socks while sitting in the chair
> and he was walking with a straight cane, however, his
> balance was normal without the cane.  He stated that he
> tends to fall; however, he did not fall during the
> examination. He did not have difficulty dressing and
> undressing.  He is well developed and well nourished,
> and somewhat muscular. He did not appear in acute
> distress. He did not have difficulty getting on and
> off the examination table. He stated that he cannot walk
> on the toes on the left side due to pain in the toes,
> however, [he] is able to walk on the heels bilaterally
> without any complaints of pain. Walking on the toes on

19

the right side was normal.[21] Balance on one lower extremity at a time was normal. He was able to squat 90% of the way without any complaints of pain or discomfort.  He tends to favor the right upper extremity to don and doff the shoes and socks and dressing and undressing.

While standing, there is no pelvic tilt noted.  He tends to stand with a stiff posture.  There is no evidence of deformity of the toes or the feet noted. . .  There are no deformities of the knees. No atrophy of muscles noted. . . .

No tenderness at the wrist noted. . . No tenderness at the elbows. . . There are several calluses noted at the third metacarpophalangeal joint and interphalangeal joints . . . His demeanor did not appear to be in discomfort. . . Manual muscle strength in wrist flexion was in good plus range, and at times it appeared that there was lack of effort on the part of the patient. . . No redness or swelling at the wrists noted.  No subluxation[22] noted.  Tinel's sign was negative. Phalen's sign was negative bilaterally.[23]

Incidental findings during the examination was multiple calluses in the left hand and he claims they are because of the cane; however, the nature of the calluses did not

---

21.  The heel walk test requires the patient to walk on his heels. The inability to do so suggests L4-5 nerve root irritation. The toe walk test requires the patient to walk on his toes. The inability to do so suggests L5-S1 nerve root irritation. Clinical Examination Terminology, MLS Group of Companies, Inc., https://www.mls-ime.com/articles/GeneralTopics/ Clinical%20Examination%20Terminology.html (Last accessed March 19, 2012).

22.  Subluxation is "an incomplete or partial dislocation." Dorland's Illustrated Medical Dictionary, 1599 (27th Ed. 1988).

23.  Positive Tinel's and Phalen's signs are associated with carpel tunnel syndrome. Jonathan Cluett, M.D., Carpal Tunnel Snydrome, About.com Orthopedics, http://orthopedics.about.com /cs/carpaltunnel/a/carpaltunnel_2.htm (Last accessed March 20, 2012).

indicate it was due to holding the cane . . . .

No paraspinal tenderness noted. . .  Range of motion in the lumbosacral spine was 60 degrees. He stated that he cannot bend anymore; however, during casual activities it was noted that he had much more flexibility of at least 70 degrees flexion. . . straight leg raising test both while sitting and supine was negative[24]. . . Manual muscle strength in both lower extremities was normal. . . . Deep tendon reflexes were 2+[25] and symmetrical. . . . I do not see any evidence of weakness or atrophy of muscles to the extent of the complaints of pain . . . he does not have balance problems . . . He has exaggerated symptoms of pain or symptom magnification than the actual pathology.

Tr. 430-434.

Caraballo did have an electrodiagnostic study of the lower extremities on July 31, 2009. The results were "suggestive of acute[26] lumbosacral radiculopathy[27] most likely L4, 5 on the left"

---

24.  The straight leg raise test is done to determine whether a patient with low back pain has an underlying herniated disc.  The patient, either lying or sitting with the knee straight, has his or her leg lifted.  The test is positive if pain is produced between 30 and 70 degrees. Niccola V. Hawkinson, DNP, RN, Testing for Herniated Discs: Straight Leg Raise, SpineUniverse, http://www.spineuniverse.com/experts/testing-herniated -discs-straight-leg-raise (Last accessed March 20, 2012).

25.  "2+" signifies normal deep tendon reflexes. Neuroexam.com, Deep Tendon Reflexes, http://www.neuroexam.com/neuroexam /content.php?p=31 (Last accessed March 20, 2012).

26.  Acute is defined as "having a short and relatively severe course." Dorland's Illustrated Medical Dictionary, 25 (27th Ed. 1988).

27.  "Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain numbness, tingling, or weakness along the course of the nerve. Radiculopathy can occur in any
(continued...)

21

but there was "[n]o electrodiagnostic evidence of a generalized peripheral neuropathy." Tr. 497. The physical examination performed before this testing revealed normal motor strength (5/5) and no muscle atrophy[28] or fasciculations[29] in the upper and lower extremities. Tr. 495.

At a physical examination on September 5, 2009, Caraballo was observed to have intact sensation, normal muscle strength, normal gait and normal deep tendon reflexes. Tr. 407.

Caraballo's primary argument is that the administrative law judge erred when he found at step three of the sequential evaluation process that Caraballo's impairments did not meet or functionally equal an impairment listed in the Social Security regulations.

At step two, the administrative law judge found that Caraballo suffered from severe impairments. If Caraballo's severe

---

27. (...continued)
part of the spine, but it is most common in the lower back (lumbar radiculopathy) and in the neck (cervical radiculopathy)." Radiculopathy, MedicineNet.com, http://www.medicinenet.com/radiculopathy/article.htm (Last accessed March 20, 2012).

28. Atrophy is defined as "a wasting away; a diminution in the size of a cell, tissue, organ, or part." Dorland's Illustrated Medical Dictionary, 165 (27th Ed. 1988).

29. Fasciculation is defined as "a small local contraction of muscles, visible through the skin, representing a spontaneous discharge of a number of fibers innervated by a single motor nerve filament." Dorland's Illustrated Medical Dictionary, 613 (27th Ed. 1988).

impairments met or equaled a listed impairment, he would have been considered disabled per se and awarded disability benefits. However, a claimant has the burden of proving that his or her severe impairment or impairments meets the requirements of a listed impairment.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  To do this, a claimant must show that all of the criteria for a listing are met Id.  An impairment that meets only some of the criteria for a listed impairment is not sufficient.  Id.

To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Caraballo bears the burden of presenting "medical findings equal in severity to all the criteria for the one most similar listed impairment."  493 U.S. at 531.

Caraballo has proffered no medical opinion; nor has he marshaled the evidence in the record, to support his contention that his conditions meet or equal the requirements of a listed impairment.  All that he has done is rely on his subjective complaints of pain and his testimony regarding his limitations.

The Social Security regulations require that an applicant for disability benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the

applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. §§ 404.1512(c) and 416.912(c). Caraballo failed to provide such evidence. No treating or examining physician provided a statement that Caraballo met or equaled the requirements of any listing. Also, no treating or examining physician offered an opinion as to how Caraballo's impairments limited his functional capabilities or ability to work for the requisite 12 month period and the bare medical records do not support Caraballo's claim of total disability, including his claim that he met or equaled the requirements of a listed impairment. Furthermore, Caraballo has not proffered any such evidence. The objective medical evidence during the relevant time period fails to demonstrate that Caraballo's impairments met or equaled a listed impairment.

The administrative law judge stated that Caraballo's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ability to perform a range of sedentary work. Tr. 22. The administrative law judge was not required to accept Caraballo's claims regarding his physical and mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the

administrative law judge to make).   It is well-established that "an
[administrative law judge's] findings based on the credibility of
the applicant are to be accorded great weight and deference,
particularly since [the administrative law judge] is charged with
the duty of observing a witness's demeanor . . . ."   Walters v.
Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see
also Casias v. Secretary of Health & Human Servs., 933 F.2d 799,
801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the
individual optimally positioned to observe and assess the witness
credibility.").   Because the administrative law judge observed
Caraballo when he testified at the hearing on September 9, 2008,
the administrative law judge is the one best suited to assess the
credibility of Caraballo.

The administrative law judge relied on the opinions of
Dr. Legaspi, the state agency physician, and Dr. Sadar, the state
agency psychologist. The administrative law judge's reliance on
those opinions was appropriate. See Chandler v. Commissioner of
Soc. Sec., __F.3d.__, 2011 WL 6062067 at *4 (3d Cir. Dec. 7.
2011)("Having found that the [state agency physician's] report was
properly considered by the ALJ, we readily conclude that the ALJ's
decision was supported by substantial evidence[.]").   The
administrative law judge's residual functional capacity assessment

25

more than accounts for Caraballo's physical and mental limitations.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.